# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Toan Sy Le, | No. CV-25-04130-PHX-SMB (CDB) |
| Petitioner, | |
| v. | **ORDER** |
| Fred Figueroa, et al., | |
| Respondents. | |

On November 5, 2025, Petitioner filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and, subsequently, a Motion for Preliminary Injunction. (Docs. 1, 8). Both the Petition and injunctive motion are now fully briefed. (Docs. 18, 19). For the reasons that follow, the Court will order the parties to provide additional briefing and evidence.

**I.     Background**

The exact contours of Petitioner's immigration proceedings are difficult to parse from the records provided. Petitioner is a native and citizen of Vietnam who entered the United States on March 7, 1995 when he was approximately 12 years old as a lawful permanent resident pursuant to a refugee program. (Doc. 18-1 at ¶ 3).[1] On March 1, 2002, Petitioner was convicted of solicitation to sell a dangerous drug in Maricopa County

---

[1] Petitioner's father fought alongside United States forces during the Vietnam War, and his family has suffered subsequent persecution from the Vietnamese government as a result. (Doc. 1 at 6).

Superior Court. (*Id.* at ¶).[2] The sentence of imprisonment (two months in jail) was suspended, and Petitioner was placed on probation. (Doc. 1-2 at 57-59). The conviction was subsequently expunged after Defendant successfully completed his term of probation. (Doc. 1-4 at 6). Petitioner has no other criminal history, and it does not appear that Respondents initiated any removal proceedings at the time of his conviction and sentence or in the several years thereafter.

In or about November 2010, Petitioner vacationed abroad. Upon returning to the United States on November 8, 2010, Petitioner presented himself for entry as a lawful permanent resident. (Doc. 1-2 at 75-78; Doc. 18-1 at ¶ 5). After questioning by a Customs and Border Patrol (CBP) agent, Petitioner was apparently allowed to enter the United States. (*Id.*). However, on March 22, 2011, the Department of Homeland Security (DHS) initiated removal proceedings against Petitioner, charging him as a removable alien based on his 2002 conviction. (Doc. 18-1 at ¶ 6). These proceedings were initiated pursuant to a Notice to Appear (NTA) issued that same date. (Doc. 1-4 at 3-4).[3] Petitioner contends that this NTA "failed to specify the date and time of any hearing, stating only that the hearing was 'to be set' in Phoenix." (Doc. 1 at 9). According to Petitioner, a hearing (of which he was unaware) was apparently conducted June 14, 2011, during which "an immigration judge likely ordered [Petitioner] removed *in absentia* for failure to appear." (*Id.* at 10). No evidence of this hearing has been provided, and counsel for Petitioner states that "records are being obtained to confirm the exact date and order." (*Id.*). However, no

---

[2] An immigration judge would later summarize the facts surrounding this conviction as follows: "[A] customer at [Petitioner's] nail salon kept asking for an introduction to friends of [Petitioner] who sold ecstasy. [Petitioner] stated…that he eventually made the introductions and was then arrested." (Doc. 1-4 at 6).

[3] According to other evidence, a second NTA may or may not have been issued on April 16, 2012. (*See* Doc. 1-4 at 5) (referencing as "Exhibit 1" a "Notice to Appear, issued April 16, 2012"). However, the document from which this reference arises refers to both the March 22, 2011 and April 16, 2012 NTAs as "Exhibit 1." (*Cf. id.* at 3-4 *with id.* at 5). Notably, beyond this bare reference, the Court is unable to locate any other evidence supporting that an NTA was issued on April 16, 2012. As such, it is unclear whether an NTA was, in fact, issued on that date, or—if it was—on what basis is asserted that Petitioner was removal.

further evidence illuminating this purported hearing and removal order has yet been provided.[4]

Nevertheless, it appears that removal proceedings continued, ultimately resulting in a June 16, 2016 "Decision and Order of the Immigration Court." (Doc. 1-4 at 2-12). Therein, an immigration judge (IJ) found that Petitioner's 2002 conviction rendered him inadmissible, and that he had been "properly classified as an arriving alien." (*Id.* at 9, 10). The IJ further found that Petitioner was not entitled to cancellation of removal. (*Id.* at 6-10). However, rather than order Petitioner's removal, the IJ granted Petitioner voluntary departure, and directed that he "must depart the United States within sixty (60) days from the date of this order." (*Id.* at 10-11). The IJ warned that "[s]hould [Petitioner] fail to leave as and when ordered, this order shall automatically become an order of removal from the United States to Vietnam upon the charge contained in the NTA." (*Id.* at 12). A coversheet to the decision states that "[t]his decision is final unless an appeal is filed with the Board of Immigration Appeals within 30 calendar days of the date of the mailing of this written decision." (Doc. 1-4 at 2).

Respondents state that Petitioner timely filed an appeal with the Board of Immigration Appeals (BIA) on July 13, 2016. (Doc. 18-1 at ¶ 10). On May 19, 2017, the BIA affirmed the IJ's June 16, 2016 ruling, but remanded the matter to the IJ "for the limited purpose of allowing the [IJ] to reinstate the voluntary departure order." (*Id.* at ¶ 11). The IJ subsequently reinstated the voluntary departure order on June 1, 2017. (*Id.*). Shortly thereafter, Petitioner apparently filed a Motion to Reconsider with the IJ seeking "to vacate the June 1, 2017 voluntary departure order," and requested a continuance (presumably of the deadline to comply with the voluntary departure order) "so he could pursue a U visa." (*Id.* at ¶ 12). On June 12, 2017, the IJ denied both the Motion to

---

[4] Notably, a June 16, 2016 Order (discussed *infra*)—which recounts at least part of Petitioner's immigration proceedings to that point—makes no mention of any hearing or removal order occurring on June 14, 2011 (or any other date prior to June 16, 2016). As such, it is unclear whether this purported 2011 hearing and order actually occurred, or what, if anything, resulted from it.

- 3 -

Reconsider and the request for continuance. (*Id.*). On July 6, 2017, the IJ issued a further memorandum "to clarify his reasoning for denying both the continuance and the vacatur of the voluntary departure order." (*Id.*) Petitioner "appealed this decision to the Board." (*Id.*).[5] On May 30, 2018, the BIA "affirmed the [IJ's] decision denying reconsideration." (*Id.* at ¶ 14).[6] On June 28, 2018, Petitioner "filed a petition for review of the Board's decision"—presumably, the BIA's May 30, 2018 affirmance—with the Ninth Circuit Court of Appeals. (*Id.* at ¶ 15; *see also* Ninth Circuit case no. 18-71871).

On July 2, 2018, Petitioner filed a Motion to Stay Removal in the Ninth Circuit. (*See* Doc. 5 in 18-71871). That same day, the Ninth Circuit granted the motion on a temporary basis, and set a briefing schedule on whether a full stay should be granted. (*See* Doc. 6 in 18-71871). On September 21, 2018, the government filed a notice indicating that it had no objection to the Motion to Stay. (*See* Doc. 8 in 18-71871). Accordingly, that same day, the Ninth Circuit continued the stay of removal, and set a briefing schedule on the merits of the appeal. (*See* Doc. 9 in 18-71871). Thereafter, Petitioner filed several motions for extensions of time, all of which were unopposed by the government. (*See* Docs. 10, 13, 16 in 18-71871).

Meanwhile, on July 20, 2018, Petitioner filed with the BIA "a motion to reconsider and terminate," presumably in relation to the BIA's May 30, 2018 affirmance. (Doc. 18-1 at ¶ 16).[7] On February 8, 2019, the BIA denied the motion, and, on March 8, 2019, Petitioner filed another petition for review with the Ninth Circuit, presumably challenging the BIA's February 8, 2019 ruling. (*Id.* at ¶ 17-18; *see also* Ninth Circuit case no. 19-

---

[5] It is not clear on what date Petitioner filed this appeal, or which specific "decision" he was appealing.

[6] It is not clear whether the BIA also addressed Petitioner's request for a continuance, or whether that issue had been raised on appeal.

[7] It is not clear what precise reconsideration Petitioner sought, or what he sought to terminate. In his Petition, Petitioner indicates that, due to an application for U visa he had filed, he had "requested that the immigration court continue or administratively close his removal proceedings"—"a common practice" in such circumstances—"to allow USCIS to decide the U visa." (Doc. 1 at 14). When the IJ denied that request, Petitioner appealed to the BIA, and subsequently to the Ninth Circuit. (*Id.* at 14-16).

- 4 -

70562).

On March 25, 2019, the Ninth Circuit sua sponte consolidated Petitioner's two appeals—case nos. 18-71871 and 19-70562—and simultaneously stayed further Ninth Circuit proceedings pending certain status reports from Petitioner, apparently related to the U visa application Petitioner had filed. (*See* Doc. 5 in 19-70562; Doc. 17 in 18-71871; *see also* Doc. 1 at 13).[8] Petitioner dutifully did so, each time unopposed by the government. (*See* Docs. 19, 21, 23, 25, 31, 33, and 36 in 18-71871; Docs. 7, 9, 11, 13, 19, 21, and 24 in 19-70562).[9] On September 16, 2022, the government moved (unopposed by Petitioner) to administratively close the Ninth Circuit proceedings. (*See* Doc. 38 in 18-71871; Doc. 26 in 19-70562). That same day, the Ninth Circuit granted the motion, noting that the closure "is not a decision on the merits and has no impact on any stay of removal" and that "at any time any party may request that these immigration petitions be reopened." (*See* Doc. 39 in 18-71871; Doc. 27 in 19-70562). Petitioner's U visa application apparently remains pending with USCIS as of the date of this Order.

Despite this history and the Ninth Circuit's stay of removal—which the government concedes "remains in place" (Doc. 18 at 3)—Petitioner was detained by ICE on July 24, 2025 "to effectuate his removal." (Doc. 18 at 2).[10] This is the first, and only, time that Petitioner has been detained by immigration authorities. As of the date of this Order, Petitioner remains in ICE custody.

---

[8] In his Petition, Petitioner states that "[i]n mid-2019, the Ninth Circuit denied [Petitioner's] petition for review" and "the stay of removal was lifted." (Doc. 1 at 16). The Court is unable to locate any such order on the docket for either 18-71871 or 19-70562. For their part, Respondents attest that their "internal systems have flagged Petitioner as having an active stay of removal from the Ninth Circuit. (Doc. 18 at 6 n.2).

[9] In his Petition, Petitioner indicates that due to substantial backlog in U visa applications, it frequently takes "about five years" for USCIS to issue a decision on a U visa application. (Doc. 1 at 14).

[10] Petitioner's arrest by ICE and the apparent efforts to deport have him prompted a flurry of activity in his underlying immigration and state criminal proceedings. On August 18, 2025, the government moved to reopen his immigration appeal in the Ninth Circuit; that motion remains pending. (*See* Doc. 40 in 18-71871; Doc. 28 in 19-70562). Petitioner has filed a Rule 32 Petition in his state criminal proceeding (which was apparently summarily dismissed), and a Petition for Review of that dismissal with the Arizona Court of Appeals. (Doc. 1-2 at 84-111; Doc. 1-4 at 33-56); that petition for review apparently remains pending.

## II. Discussion

Given the above, it is not clear when any order of removal directing that Petitioner be deported to Vietnam became final. More importantly, even assuming *arguendo* that there is a final order of removal,[11] there is no question that, due to the ongoing stay of removal issued by the Ninth Circuit, the removal period has not yet begun, and mandatory detention is therefore unauthorized. *See* 8 U.S.C. § 1231(a)(1)(B)(ii).

In its Response, the government does not identify another basis for either Petitioner's arrest on July 24, 2025, or for his continued detention. Rather, the government appears to assume § 1231(a) applies, and thus that Petitioner's continued detention should be analyzed pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001).[12] In light of the active stay of removal in the Ninth Circuit, however—which the government admits remains in effect[13]—this is incorrect as a matter of law. Due to the Ninth Circuit's stay, the § 1231(a)(1) removal period has not yet begun, and mandatory detention is only authorized "***during*** the removal period." *See* 8 U.S.C. § 1231(a)(2) (emphasis added). Put simply, Petitioner cannot have been legally arrested or remain detained pursuant to 8 U.S.C. §

---

[11] From the record provided, it appears that there are possibly two instances in which a removal order became final. First, the purported June 14, 2011 *in absentia* order may have become final if it was not timely appealed to the BIA. However, no evidence supporting that an order of removal issued on that date actually occurred. Second, the IJ's June 16, 2016 order—and/or subsequent June 1, 2017 reinstatement of voluntary departure—may have become final if either 1) Petitioner did not timely appeal one or the other to the BIA, or 2) when the BIA issued its respective May 19, 2017 and May 30, 2018 affirmances of the IJ's underlying orders. However, it is not clear what effect—if any—timely appeal of the BIA rulings to the Ninth Circuit may have had on the finality of the underlying voluntary departure/removal orders. Relatedly, it is not clear what effect, if any, Petitioner's failure to self-deport pursuant to the voluntary departure orders issued by the IJ—not withstanding Petitioner's appeals of those orders—may have had on the finality of the IJ's orders.

[12] Therein, the government argues that Petitioner cannot meet his burden because he has "delayed his own removal through his own actions," specifically "his own litigation strategy." (Doc. 18 at 3-4). While the Government faults Petitioner for filing "countless stay requests" in the Ninth Circuit, the Court notes that the Government did not oppose *any* of those filings. Indeed, the Government did not even oppose Petitioner's Motion for Stay of Removal, and itself moved to administratively close the Ninth Circuit proceedings. (*See* Docs. 8, 38 in 18-71871; Doc. 26 in 19-70562). Whatever "dilatory" tactics Petitioner has engaged in, the Government has been a willing partner.

[13] *See* Doc. 18 at 6 ("the reason Respondents have yet to remove Petitioner is because the Ninth Circuit's stay of removal remains in place").

1231(a).[14]

For his part, Petitioner speculates that he may be detained pursuant to 8 U.S.C. § 1226. (Doc. 19 at 5-7). But it is not Petitioner's burden to guess at the basis for his detention. That burden lies with the government to both identify and support its authority for depriving a person of their liberty. Respondents have not done so.

On the record presented, the Court is tempted to grant preliminary relief. However, without knowing for certain the legal basis for Petitioner's present detention, the Court is unable to craft appropriate relief. That is, having concluded that § 1231(a) does not apply, the Court cannot order outright release pursuant to *Zadvydas*[15] because such relief may be improper depending on what legal basis Petitioner *is* detained. If, for example, Petitioner is—as he speculates—instead detained pursuant to 8 U.S.C. § 1226, then he is entitled to a bond hearing (but not court-ordered release). 8 U.S.C. § 1226(a). As such, the Court cannot grant preliminary injunctive relief at this time. *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir. 2015) (injunctive relief must be "of the same character as that which may be granted finally") (quoting *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945)) (internal quotations omitted).

Accordingly, the Court will order Respondents to provide additional briefing identifying and discussing, with evidence to support, the legal basis for Petitioner's continued detention.

**IT IS ORDERED:**

(1) No later than **5:00 P.M. WEDNESDAY, JANUARY 14, 2026**, Respondents must provide additional briefing identifying and discussing, with evidence to

---

[14] There is thus also no way that Respondents can legally "effectuate [Petitioner's] removal" short of defiance of the Ninth Circuit's stay order.

[15] The Court agrees with Petitioner that, pursuant to *Zadvydas*, he has satisfied his burden of demonstrating that there is "good reason" to believe that his removal to Vietnam is not significantly likely in the reasonably foreseeable future (due to the Ninth Circuit stay of removal), and that Respondents have not rebutted that showing. 533 U.S. at 699-701. Respondents provide no evidence that they have taken any steps to effect Petitioner's removal, and concede that they cannot remove him from the country while the Ninth Circuit's stay remains active. Put simply, if *Zadvudas* applied, Petitioner would plainly be entitled to relief. *Id.*

1  support, the legal basis for Petitioner's continued detention.

2      (2)    Petitioner may file a reply no later than **5:00 P.M. FRIDAY, JANUARY 16, 2026**.

4      Dated this 9th day of January, 2026.

_____
Honorable Susan M. Brnovich
United States District Judge