# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Toan Sy Le,<br><br>    Petitioner,<br><br>v.<br><br>Fred Figueroa, et al.,<br><br>    Respondents. | No. CV-25-04130-PHX-SHD (CDB)<br><br><br>**ORDER** |

By Order dated January 9, 2026, the Court directed the parties to provide additional briefing on "the legal basis for Petitioner's continued detention." (Doc. 20 at 7-8.) The parties have now done so. (Docs. 22, 24.) For the reasons that follow, the Court grants the Petition and will order Respondents to immediately release Petitioner from custody.

**I.  Background**

As recounted in the Court's January 9, 2026 Order: On June 16, 2016 an immigration judge (IJ) found that Petitioner was not entitled to cancellation of removal, but—rather, than order his immediate removal—granted him 60 days to voluntarily depart the United States. (Doc. 20 at 3.) Petitioner timely appealed that order to the Board of Immigration Appeals (BIA). (*Id.*) On May 19, 2017, the BIA affirmed the IJ's ruling, but remanded the matter to the IJ "for the limited purpose of allowing the [IJ] to reinstate the voluntary departure order." (*Id.*) The IJ subsequently did so on June 1, 2017. (*Id.*) Petitioner filed a Motion for Reconsideration with the IJ seeking "to vacate the June 1, 2017 voluntary departure order," and requested a continuance. (*Id.*) On June 12, 2017, the

IJ denied those requests. (*Id.* at 3-4.) Sometime after July 6, 2017, Petitioner appealed that decision to the BIA, but the BIA denied the appeal on May 30, 2018. (*Id.* at 4.) Petitioner thereafter filed an appeal of the BIA's May 30, 2018 decision with the Ninth Circuit Court of Appeals, which issued a stay of removal on July 2, 2018. (*Id.*) That stay remains in effect. (*Id.* at 5.)

Given this history, it was unclear to the Court when any order directing that Petitioner be removed to Vietnam became final, thereby triggering the 8 U.S.C. § 1231(a) period. *See* 8 U.S.C. § 1231(a)(1)(B). The Court hypothesized that

> it appears that there are possibly two instances in which a removal order became final. First, the purported June 14, 2011 *in absentia* order may have become final if it was not timely appealed to the BIA. However, no evidence supporting that an order of removal issued on that date actually occurred. Second, the IJ's June 16, 2016 order—and/or subsequent June 1, 2017 reinstatement of voluntary departure—may have become final if either 1) Petitioner did not timely appeal one or the other to the BIA, or 2) when the BIA issued its respective May 19, 2017 and May 30, 2018 affirmances of the IJ's underlying orders. However, it is not clear what effect—if any—timely appeal of the BIA rulings to the Ninth Circuit may have had on the finality of the underlying voluntary departure/removal orders. Relatedly, it is not clear what effect, if any, Petitioner's failure to self-deport pursuant to the voluntary departure orders issued by the IJ—not withstanding Petitioner's appeals of those orders—may have had on the finality of the IJ's orders.

(*Id.* at 6 n.11.) Because the Court needed to understand the basis for Petitioner's continued detention to craft any appropriate relief, it directed the parties to file supplemental briefing clarifying the nature of Petitioner's detention. (*Id.* at 7.)

**II.     Discussion**

Respondents assert that Petitioner's failure to timely appeal the IJ's June 1, 2017 reinstatement of the June 16, 2016 voluntary removal order rendered that order administratively final for § 1231(a)(1)(B) purposes. (Doc. 22.) Although Petitioner filed a Motion for Reconsideration of the June 1, 2017 reinstatement, and then appealed the subsequent denial to the BIA, the Motion for Reconsideration did not toll the 30-day appeals period. Accordingly, even if Petitioner's subsequent appeal to the BIA included an appeal of the June 1, 2017 reinstatement, that appeal was not timely made because it was filed more than 30 days after June 1, 2017. Therefore, for § 1231(a)(1)(B) purposes,

it appears that Petitioner's order of removal became final, at the latest, upon the expiry of the 60-day period in which he was granted leave to voluntarily depart the United States (*i.e.*, on or about August 1, 2017). (*See* Doc. 1-4 at 12 (June 16, 2016 Order warning that "[s]hould [Petitioner] fail to leave as and when ordered, this order shall automatically become an order of removal from the United States to Vietnam upon the charge contained in the [Notice to Appear]").)

Respondents indicate that the order may have become final even earlier, at the time Petitioner filed his Motion for reconsideration. (Doc. 22 at 3 n.3 (citing 8 C.F.R. § 1240.26(e)(1)).) Regardless of whether the June 1, 2017 Order became administratively final for § 1231(a)(1)(B) purposes at the time he filed his Motion for Reconsideration or upon expiry of the 60-day voluntary departure period, it is clear that Petitioner's present detention is pursuant to 8 U.S.C. § 1231.

Proper resolution of this case is thus apparent. As the Court noted in its January 9, 2026 Order,

> The Court agrees with Petitioner that, pursuant to *Zadvydas*, he has satisfied his burden of demonstrating that there is "good reason" to believe that his removal to Vietnam is not significantly likely in the reasonably foreseeable future (due to the Ninth Circuit stay of removal), and that Respondents have not rebutted that showing. 533 U.S. at 699-701. Respondents provide no evidence that they have taken any steps to effect Petitioner's removal, and concede that they cannot remove him from the country while the Ninth Circuit's stay remains active. Put simply, if *Zadvudas* applied, Petitioner would plainly be entitled to relief.

(Doc. 20 at 7 n. 15.)[1] Because it is now clear that *Zadvydas* applies, the Court finds that

---

[1] In their initial Response, Respondents cited out-of-circuit case *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) for the proposition that "courts must be sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." (Doc. 18 at 6.) Characterizing Petitioner's litigation history as "dilatory," Respondents argued that "[t]he court should not allow Petitioner to benefit from sharp litigation tactics, and it should join with the majority of courts in determining that when a petitioner holds the key that unlocks his prison cell, he should not be entitled to release under *Zadvydas*." (*Id.* (internal quotation and citation omitted).) Even if *Ly* was binding on this Court, this argument is not well taken. Indeed, while the *Ly* Court held that frivolous filings should not be encouraged,

> appeals and petitions for relief are to be expected as a natural part of the process. An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues for relief

- 3 -

Petitioner's continued detention violates the Fifth Amendment and thus will grant Count Six of the Petition[2] and order that Petitioner be immediately released from custody.

### III. "Lawfare"

In recounting the history of Petitioner's immigration proceedings, counsel for Respondents stated that

> The government has not delayed Petitioner's removal by its conduct during Petitioner's removal proceedings and his related litigation. The delay is attributable almost entirely to Petitioner, who moved quickly to secure a stay of removal from the Ninth Circuit, and who then dragged his feet for over seven years and has made no progress whatsoever on the matters for which the stays of his petition for review were granted.

(Doc. 18 at 6). Elsewhere, counsel for Respondents characterized Petitioner as seeking "countless stay requests and remand requests," in order "to delay his own petition for review." (*Id.* at 1.)

In its January 9, 2026 Order, the Court noted that

> While the Government faults Petitioner for filing "countless stay requests" in the Ninth Circuit, the Court notes that the Government did not oppose any of those filings. Indeed, the Government did not even oppose Petitioner's Motion for Stay of Removal, and itself moved to administratively close the Ninth Circuit proceedings. (See Docs. 8, 38 in 18-71871; Doc. 26 in 19-70562). Whatever "dilatory" tactics Petitioner has engaged in, the Government has been a willing partner.

(Doc. 20 at 6 n.12.) Indeed, the Court noted that much of the delay was attributable to the Government itself, given that the pursuit of a U-Visa application—the ostensible basis for

---

> that the law makes available to him. Further, although an alien may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take. The mere fact that an alien has sought relief from deportation does not authorize the INS to drag its heels indefinitely in making a decision. The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

351 F.3d at 272. There has been no argument in any of Petitioner's underlying proceedings that any of his filings have been frivolous or otherwise not taken in good faith, and, as noted (*see* Doc. 29 at 6 n.12), the Government did not even oppose Petitioner's Motion for Stay of Removal in the Ninth Circuit. As such, whatever persuasive value *Ly* may have in this proceeding, it does not militate against granting relief to Petitioner here. (*See* further discussion in Part III, *infra*.)

[2] Counts One through Five were dismissed by Order dated November 13, 2025. (Doc. 5 at 6).

the Ninth Circuit's continued stay—often takes more than five years for the United States Citizenship and Immigration Services (USCIS) to adjudicate. (*Id.* at 5 (noting that "Petitioner's U visa application apparently remains pending with USCIS as of the date of this Order").) There has been no finding—no argument even—that any of Petitioner's filings in this Court, the Ninth Circuit, the State courts, or the immigration courts, have been improperly brought.

Nevertheless, counsel for Respondents continues to disparage Petitioner for engaging in "dilatory litigation tactics," and now calling them "lawfare." (Doc. 22 at 3, 5.) Respondents' characterization of the procedural record is not well taken. Neither the insistence on due process nor the exercise of appellate rights constitute "lawfare." That additional litigation may be inconvenient to the Government is not grounds for denigrating an opposing party as "dragg[ing] his feet" or engaging in "dilatory" tactics. When a party seeks to hold the Government to its burden, even across multiple judicial layers, the Government should welcome that opportunity, as it provides the chance to not only reinforce the propriety of its position but also to demonstrate to the public that it is engaging in good faith with a party's right to challenge that position through the judicial process. Exasperation at having to do so is not the sign of a confident, well-founded position.

While the coarsening of dialogue may be encouraged—even rewarded—in the public sphere these days, that coarsening must not creep into legal practice, and both the courts and the parties that appear before them must zealously guard against it. Accusing a party of engaging in "lawfare" simply for exercising their rights is not acceptable and does not reflect well on counsel or the Government.

**IT IS ORDERED:**

(1) Count Six of the Petition (Doc. 1) is **granted**.

(2) Respondents must **IMMEDIATELY RELEASE** Petitioner from custody.

(3) Within **48 HOURS** of the date of this Order, Respondents must file a Notice of Compliance.

(4) Petitioner's Motion for Preliminary Injunction (Doc. 8) is **denied as moot**.

1    (5)   The Clerk of Court must enter judgment accordingly, and close this case.

2    (6)   The Clerk of Court is further directed to email a copy of this Order to
3 Katherine Branch at katherine.branch@doj.gov, with her attention directed to Part III of
4 this Order.

5    Dated this 16th day of January, 2026.

_____
Honorable Sharad H. Desai
United States District Judge